IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROBERT N. SMITHBACK,                    )
ID # 1080109,                           )
        Plaintiff,                     )
vs.                                     )        No. 3:07-CV-0288-M (BH)
                         )            ECF
STATE OF TEXAS, et al.,                 )    Referred to U.S. Magistrate Judge
        Defendants.                    )

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

On April 27, 2001, plaintiff was indicted for aggravated sexual assault of a child in Cause No. F01-73701-TR . (Supp. Compl. at 13-15.) In October 2001, he pled guilty plea and received deferred adjudication probation for five years. His probation was subsequently revoked on January 18, 2002, and he was sentenced to forty-five years in the Texas prison system. (*Id.*)

On February 12, 2007, plaintiff filed[1] this civil action pursuant to 42 U.S.C. § 1983 against twenty-one defendants:  (1) the State of Texas; (2) the Texas Board of Criminal Justice (TBCJ); (3) the Texas Department of Criminal Justice (TDCJ); (4) the Texas Board of Pardons and Paroles (BPP); (5) the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID); (6) the Texas Court of Criminal Appeals (CCA); (7) Governor Rick Perry; (8) Judge Sharon

---

[1]  When the Court indicates a date of filing in this recommendation, it utilizes the date of "filing" noted on the docket sheet although it recognizes that the prison mailbox rule may actually deem the document filed when plaintiff placed it in the prison mail system for mailing.

Keller of CCA; (9) Judge Tom Price of CCA; (10) Judge Lawrence Meyers of CCA; (11) Brad

Livingston, Executive Director of TDCJ; (12) Nathaniel Quarterman, Director of TDCJ-CID; (13)

Rissi Owens, Director of BPP; (14) Christina Melton Crain,[2] Chairwoman TBCJ; (15) Dallas County

District Attorney's Office; (16) Laura Coats, Assistant Dallas County District Attorney; (17) the

265th Judicial District Court; (18) Judge Keith T. Dean; (19) the law firm of Cynthia Michelle

Barbare & Associates; (20) Cynthia Michelle Barbare, Attorney at Law; and (21) Chuck Birdsall,

Attorney.  (*See* Compl. at 2-3b.)

The claims against Defendants 1 through 18 relate to plaintiff's conviction and current

incarceration status.  (*See* Supp. Compl. at 2-12, 22-23.)  The claims against Defendants 19 through

21 concern plaintiff's retention of legal services for representation on post-conviction proceedings

in October 2004.  (*Id.* at 24.)  In particular, plaintiff claims that Defendants 1 through 6, and 17

have neglected to prevent the deprivation of his civil rights; that Defendants 7 through 16 and 18

have engaged in organized criminal activity for the purpose of depriving him of his civil rights for

political or personal gain; and that Defendants 19 through 21 have wronged him in the following

respects – (1) fraud; (2) criminal deprivation of his civil rights; (3) embezzlement; (4) breach of

contract; (5) theft of $2,000.00; (6) false advertising; (7) violation of judicial oath; and (8)

continuing deprivation of rights. (*See* Compl. at 3-3b.)

Plaintiff also specifically indicates that he sues all defendants except the private attorneys and

their firm (Defendants 19-21) under the Texas Tort Claims Act (TTCA), Tex. Civ. Prac. & Rem.

Code Ann. § 101.101, et seq.  (*Id.*; Supp. Compl. at 2-13.)  He specifically challenges the constitu-

---

[2] Plaintiff spells the name "Crain" and "Crane" in different portions of his complaint.  Because he previously pursued litigation against Ms. Crain in a different case, the Court utilizes that spelling.

tionality of Tex. Code Crim. Proc. art. 11.07, §§ 4(a) and 5 in part, and seeks (1) immediate injunctive relief to suspend the unconstitutional portions of Article 11.07, (2) a declaration that Article 11.07 is invalid, (3) monetary damages, (4) injunctive relief to suspend his conviction and sentence, and (5) any other relief the Court deems just and proper. (Compl. at 4.) Plaintiff also mentions 42 U.S.C. §§ 1985, 1986, and 1994, as well as numerous criminal provisions under Title 18 of the United States Code,[3] including RICO,[4] as a basis for some of his claims. (Supp. Compl. at 2-13.)

## A. Litigation History

Between 2001 and 2006, plaintiff[5] filed approximately fifteen habeas or civil actions in an attempt to overturn his conviction and sentence through State and federal post-conviction processes as well as through executive clemency. With a few exceptions, plaintiff has previously sued or attempted to sue the twenty-one defendants named herein during his various actions. Because some of the previous suits provide necessary context for the instant case and the recommended disposition, the Court briefly reviews the relevant cases.

### 1. *Cause No. 3:01-CV-1658-M*

In August 2001, plaintiff filed suit against Judge Dean of the 265th Judicial District Court, the Dallas County District Attorney's Office, former Dallas District Attorney Bill Hill, and the 265th Judicial District Court for acts and omissions related to criminal proceedings against him for aggra-

---

[3]  He specifically lists 18 U.S.C. §§ 241, 242, 1581, 2331(5), 2332b, 2338, and 2381 as statutory bases for some claims.

[4]  Plaintiff identifies his RICO claims as arising under 42 U.S.C. § 1994 and 18 U.S.C. § 1581. However, RICO claims arise from 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organization Act (RICO).

[5]  Because Mr. Smithback commenced this civil action as a plaintiff, the Court will generally refer to him as plaintiff even when discussing his prior habeas filings.

3

vated sexual assault of a minor. *See Smithback v. 265th Jud. Dist. Ct.*, No. 3:01-CV-1658-M (N.D. Tex. filed Aug. 23, 2001) [hereinafter *Smithback I*].[6] He later amended his complaint to add his defense attorney Paul Johnson as a defendant. *See id.* (order granting motion to amend). After receiving answers to a Magistrate Judge's Questionnaire, the Court found, among other things, that (1) *Heck v. Humphrey*, 512 U.S. 477 (1994) bars the action in its entirety; (2) plaintiff's request for release from imprisonment was an inappropriate remedy in such a civil action; (3) Judge Dean was immune from damages on the claims asserted against him; (4) the District Attorney enjoyed absolute immunity with respect to the claims asserted; and (5) the 265th Judicial District Court and the Dallas County District Attorney's Office were non-jural entities not subject to suit. *See id.* (findings, conclusions, and recommendation and order accepting). On June 3, 2002, the Court dismissed the action as frivolous to the extent it arose under 42 U.S.C. § 1983 and dismissed it without prejudice for failure to exhaust state remedies to the extent it should be construed as a petition for writ of habeas corpus. *See id.* (judgment).

### 2. *Cause No. 3:02-CV-1081-G*

In May 2002, plaintiff filed suit against Judge Dean, District Attorney Hill, Dallas County District Clerk Jim Hamlin, attorney Paul Johnson, the Dallas County Judicial District Court, the Dallas County Sheriff's Department, and the Texas Department of Criminal Justice – Institutional Division (TDCJ-ID)[7] for alleged acts and omissions related to his criminal conviction for aggravated sexual assault of a child and subsequent incarceration. *See Smithback v. Dallas County Jud. Dist.*, No.

---

[6]  This case is designated as *Smithback I* for purposes of this case; however, it was not plaintiff's first foray into federal court.

[7]  Such defendant is now known as the Texas Department of Criminal Justice - Correctional Institutions Division.

3:02-CV-1081-G (N.D. Tex. filed May 21, 2002) [hereinafter *Smithback II*].  Among other things, the Court found that (1) *Heck* bars the action in its entirety; (2) plaintiff's request for release from imprisonment was an inappropriate remedy in such a civil action; (3) Judge Dean was immune from damages on the claims asserted against him; (4) District Attorney Hill enjoyed absolute immunity with respect to the claims asserted; and (5) plaintiff could not recover on his claim that TDCJ-ID failed to compensate him for prison work.  *See id.* (findings, conclusions, and recommendation and order accepting).  On August 13, 2002, the Court dismissed the action with prejudice as frivolous. *See id.* (judgment).

### 3. *Cause No. 3:02-CV-1901-L*

In September 2002, plaintiff filed a federal petition pursuant to 28 U.S.C. § 2254 to challenge his conviction for aggravated sexual assault of a child wherein he also sought money damages.  *See Smithback v. Cockrell*, No. 3:02-CV-1901-L (N.D. Tex. filed Sept. 4, 2002) [hereinafter *Smithback III*].  On September 27, 2002, the undersigned Magistrate Judge recommended that the petition be dismissed for failure to exhaust state remedies. *See id.* (findings, conclusions, and recommendation). Because the petition also contained a request for money damages, the Court considered whether to construe it as a § 1983 action but specifically declined to do so after noting four prior civil actions that were dismissed as frivolous or for failure to state a claim upon which relief may be granted as well as plaintiff's failure to pay the proper filing fee.  *See id.*  On November 8, 2002, the District Court accepted the recommendation of the magistrate judge, and dismissed the habeas action without prejudice for the failure to exhaust state remedies.  *See id.* (order and judgment).

### 4. *Cause Nos. 3:04-CV-1019-G and 3:05-CV-0578-BD*

In May 2004, without prepaying the filing fee, plaintiff commenced a civil action against

5

Governor Rick Perry; the Democratic and Republican parties of Texas; TBCJ; and TDCJ to challenge a prison correspondence policy. *See Smithback v. Perry*, No. 3:04-CV-1019-G (N.D. Tex. filed May 11, 2004) [hereinafter *Smithback IV*]. After plaintiff paid the filing fee, the assigned magistrate judge recommended that the action be dismissed for lack of jurisdiction because the asserted claim was not ripe. *See id.* (findings, conclusions, and recommendation). The Magistrate Judge also found that the named defendants were not proper parties for the § 1983 action. *See id.* On November 3, 2004, the District Court dismissed the action for lack of jurisdiction. *See id.* (judgment).

In March 2005, plaintiff paid part of the civil filing fee[8] and again challenged the correspondence policy with an added challenge to the Prison Litigation Reform Act. *See Smithback v. State of Texas*, 3:05-CV-0578-BD[9] (N.D. Tex. filed Mar. 22, 2005) [hereinafter *Smithback V*]. On June 2, 2005, the assigned magistrate judge recommended that plaintiff be allowed to prosecute his claims against two individual defendants, Christina Melton Crain and Susie Chiles. *See id.* (findings, conclusions, and recommendation). The Magistrate Judge otherwise found the action frivolous primarily for the following reasons:

> 1. sovereign immunity (defendants United States, State of Texas, TBCJ, and TDCJ);
>
> 2. immunity for legislative actions (defendants Senator John Whitmire and unnamed members of the Texas Senate and House of Representatives);
>
> 3. lack of personal involvement for non-policymakers (defendants Governor Rick Perry, Lieutenant Governor David Dewhurst, TDCJ Executive Director Brad Livingston, TDCJ-ID Director Douglas Dretke, and the American Correctional

---

[8]  Plaintiff paid $150.00 as the filing fee although the filing fee had increased to $250.00 effective February 7, 2005. In view of the recent fee increase, the Court granted him additional time to pay the fee, and on April 21, 2005, the Court received the unpaid portion.

[9]  Judge Lynn presided over the action until it was referred for all further proceedings to Magistrate Judge Kaplan by consent of all parties.

Association).

*Id.* On June 14, 2005, the District Court accepted the Findings, Conclusions, and Recommendation; directed the District Clerk to issue summons for defendants Crain and Chiles; and dismissed all claims against all other defendants with prejudice. *Id.* (order accepting findings, conclusions, and recommendation).

The Court thereafter appointed counsel for plaintiff and, by consent of the parties, the case was assigned to the Magistrate Judge for all further proceedings. *Id.* (order appointing counsel, doc. 62, and order reassigning case to magistrate judge, doc. 67). On January 29, 2007, the Court granted defendants' motion for summary judgment and dismissed all claims against defendants Crain and Chiles with prejudice. *See id.* (mem. order and judgment).

**5.** ***Cause No. 3:05-CV-2507-M***

In December 2005, petitioner commenced a civil action pursuant to 18 U.S.C. § 2338 and 42 U.S.C. §§ 1983, 1985, and 1986 against Judge Dean as well as the State of Texas; three unidentified judges of the Texas Court of Criminal Appeals; Louise Pearson, Court Clerk for Texas Court of Criminal Appeals; an unidentified Director of the TDCJ Division of Pardons and Paroles Division; and Assistant Dallas County District Attorney Coates. *See Smithback v. State of Texas*, No. 3:05-CV-2507-M (N.D. Tex. filed Dec. 21, 2005) [hereinafter *Smithback VI*]. Instead of paying the required filing fee, plaintiff moved for an order from the Court to have a non-party to the action withdraw the filing fee from his non-prison bank account and send it to this Court for payment of the filing fee. *See id.* (motion for order to withdraw filing fee). The Court noted that, "as a frequent litigator", plaintiff certainly understood his responsibility to either pay the requisite filing fee or submit an application to proceed without prepayment of fees when he filed the action, and further

noted the unavailability of the latter option due to the three-strikes provision of 28 U.S.C. §
1915(g).  *See id.* (order dated Mar. 24, 2006).  Rather than recommend that this action be dismissed
outright for the failure to pay the filing fee, the undersigned Magistrate Judge granted plaintiff twenty
days to pay the full filing fee of $250.00 to the Clerk of the Court, and informed him that a failure
to timely pay the fee would subject this action to dismissal without prejudice.  *See id.*  On April 19,
2006, the Court dismissed the case without prejudice after the plaintiff failed to comply with the
order that he pay the filing fee.  *See id.* (order of dismissal).

   6. *Cause No. 3:06-CV-1419-P*

   In August 2006, plaintiff invoked the jurisdiction of this Court by filing an application to
proceed *in forma pauperis* and a federal petition for writ of habeas corpus purportedly pursuant to 28
U.S.C. § 2241 to challenge the constitutionality of his confinement for aggravated sexual assault.
*See Smithback v. Quarterman*, No. 3:06-CV-1419-P (N.D. Tex. filed Aug. 8, 2006) [hereinafter
*Smithback VII*].  After the Court notified plaintiff that his filings were deficient, he filed a notice of
intent to amend to add civil rights claims pursuant to 42 U.S.C. § 1983 in addition to his habeas
claims and submitted $400.00 to the Court – $350.00 for the filing fee for commencing a civil action
and $50.00 for copies of documents previously filed by him.  A couple of days later, the Court
received an amended habeas petition wherein plaintiff specifically challenged his October 2, 2001
conviction in Cause No. F01-73701-TR for aggravated sexual assault of a child, and also indicated
that he wanted to amend his habeas application to seek relief under § 1983.  On August 28, 2006,
the Court denied the request to amend the habeas action to assert § 1983 claims and informed
plaintiff that the proper procedure for pursuing claims under § 1983 was to commence a separate

civil action by filing a complaint under that statute with the $350 filing fee for such actions.[10]

On August 30, 2006, the Court received a motion for leave to amend wherein plaintiff indicated his desire to supplement this habeas action with claims under 42 U.S.C. §§ 1983, 1985, and 1986, thus transforming his habeas action in large part to a non-habeas, civil action against nineteen defendants, including Nathaniel Quarterman, the respondent in the habeas action.  On August 31, 2006, the Court received a motion for preliminary injunction and a motion to transfer documents.  On September 1, 2006, the Court denied the August 30, 2006 motion for leave to amend.  On September 25, 2006, the Court received a request from plaintiff that the Court "make the proper disposition, severing Petitioner's Civil Rights claims, and open a new Civil Action so that justice may be administered properly."  Accordingly, the Court (1) denied the request to proceed *in forma pauperis* as moot because plaintiff had paid more than the $5.00 fee required for a habeas action; (2) denied the request to sever civil rights claims into a new civil action; (3) ordered that plaintiff's excess fee payment be set aside for a properly filed § 1983 action and if he intended to file such action, he must file the "action on the standard form for such actions within thirty days" of the acceptance of the findings and recommendation; (4) construed the § 2241 petition as a petition filed pursuant to § 2254; (5) transferred the petition to the Fifth Circuit Court of Appeals as a successive petition; and (6) warned plaintiff that he may be sanctioned, "if he files another successive habeas petition without first obtaining authorization from the Fifth Circuit."  *See id.* (findings, conclusions, and recommendation; order accepting findings; and judgment).

After plaintiff appealed the disposition of this action and requested various transfers of funds

---

[10] Due to a docketing error plaintiff's fee payment of $350.00 was not reflected on the docket sheet until September 28, 2006.

from the money he submitted to the Court, the Court issued a Notice of Deficiency and Order in which it informed him that (1) no § 1983 action "will commence until he files such an action on the standard form for such actions"; (2) although he had submitted funds for copies, such funds were "fully depleted" once the Court transferred $5.00 for completion of the $350.00 civil filing fee; and (3) he had neither paid the $455.00 appellate filing fee nor filed a proper request to proceed *in forma pauperis* on appeal. *See id.* (notice of deficiency and order dated Dec. 1, 2006). The Court ordered him to cure the deficiency within thirty days. *Id.*

On December 21, 2006, the Court received three documents from plaintiff for filing in his § 2241action: (1) a "Reference Complaint" or "Referandum Complaint" filed on the standard § 1983 form which either indicates that a particular section of the form is not applicable or directs the reader's attention to a "Complaint dated 30 August, 2006 A.D."; (2) a document titled "Compliance with Order and Supplemental Complaint on Standard Form" in which he informs the Court that he has complied with the Order of December 1, 2006, by filing his "Referandum Complaint"; and (3) a motion to transfer documents from his previously commenced civil action, *Smithback v. State of Texas*, No. 3:05-CV-2507-M. The Court found that plaintiff had not complied with the December 1, 2006 order as it relates to filing a § 1983 action, and found no reason to transfer documents from Cause No. 3:05-CV-2507-M to any case.

In light of his failure to comply with the December 1, 2006 order, and ample previous warnings regarding potential sanctions for continued legal maneuvering and abusive litigation practices, the Court issued the following order on January 25, 2007:

* * *

3.  Smithback shall **NOT** include habeas claims in his § 1983 action – a § 1983 action is not the proper vehicle for habeas claims. The instant habeas action

10

and Smithback's prior habeas action have given him ample opportunity to assert his habeas claims in the proper context.

* * *

6.   The Court expressly **WARNS** Smithback that a failure to follow this or any other order of the Court, the instructions on the standard § 1983 form, or the local or federal rules may subject him to sanctions by the Court, up to and including a monetary sanction payable to the Court and a prohibition on filing new actions of any kind without preapproval of the Court.

7.   The Court further expressly **WARNS** Smithback that, if he fails to comply with this order, the $350.00 that has been held by the Court for a properly filed civil action will be subject to forfeiture as part of the monetary sanctions.  In addition, a failure to comply with this order may result in the summary dismissal of his § 1983 complaint as a sanction for such non-compliance.

* * *

9.   The Court also **WARNS** Smithback that the filing of unwarranted, unnecessary, or repetitive motions, such as the current motion to transfer, may subject him to a monetary sanction payable to the Court.

10.   The Court further **WARNS** Smithback that a future dismissal on grounds of frivolity, maliciousness, failure to state a claim upon which relief may be granted, or immunity may subject him to sanctions by the Court, up to and including a monetary sanction payable to the Court and a prohibition on filing new actions of any kind without preapproval of the Court.

11.   Nothing in this order eliminates any prior sanctions imposed against Smithback.  Furthermore, all prior sanction warnings remain in effect, as does the 28 U.S.C. § 1915(g) bar to filing civil actions *in forma pauperis*.

## B. Procedural History

During the preliminary screening of this action, on March 14, 2007, plaintiff filed a motion for mandatory injunction wherein he sought immediate release from imprisonment.[11] On March 23, 2007, the District Court denied the motion for injunction as procedurally defective and lacking in merit because the "requested injunction disserves the public interest in confining convicted individuals until they have served their sentence in accordance with applicable law or until they

---

[11] Although plaintiff contends that the instant action "is not an application for writ of habeas corpus", (Supp. Compl. at 21), he clearly seeks release from his allegedly illegal incarceration, (Comp. at 4).  However, the exclusive federal means to obtain immediate or speedier release from incarceration lies with a petition for writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 487-90, 500 (1973).  Thus, plaintiff seeks habeas relief in this action in direct contravention of the order by Judge Solis.

successfully overturn the conviction through a proper collateral challenge." The Court monetarily sanctioned plaintiff for filing the unwarranted motion and ordered him to pay the sanction by April 30, 2007. It also warned plaintiff that the failure to pay the sanction may subject him to "further sanctions up to and including dismissal of this case" for his failure to comply with an order of the Court.

Instead of paying the $50.00 sanction, plaintiff filed (1) an affidavit of removal of District Judge from this case pursuant to 28 U.S.C. § 144 and (2) a motion for relief from order pursuant to Fed. R. Civ. P. 60(b)(4) on April 6, 2007. On April 25, 2007, he filed a supplemental motion for relief from order pursuant to Rule 60(b). In each of these filings, he stresses that this action is an attempt to avoid obligations from an unlawfully induced plea agreement. On April 12, 2007, the District Judge construed the affidavit of removal as a motion to disqualify her, and denied the motion as legally insufficient. The District Judge noted the three-part test for legal sufficiency of an affidavit submitted under 28 U.S.C. § 144, and found that plaintiff's affidavit "utterly fails to meet" such requirements, and that his "allegations are plainly insufficient to justify [her] recusal from this case" because the "allegations of bias relate to judicial dispositions" rather than personal bias. The motion for relief and supplemental motion for relief are before this Court for recommendation and are addressed below.

## II. MOTIONS FOR RELIEF FROM ORDER

In his motion for relief from order, plaintiff seeks relief from the $50.00 monetary sanction imposed by this Court pursuant to Fed. R. Civ. P. 60(b)(4). He argues that the order is void in that it violates clearly established common laws and that the monetary sanctions "are entirely frivolous" because he "has the right to invoke through a motion, any civil right he wishes to invoke without

any retaliation from anyone." In his supplemental motion for relief from order, plaintiff argues that the Court's order denying his requested injunction is void for purposes of Rule 60. He also alleges that he is in danger of retaliation and physical harm.

Plaintiff's allegations of harm and retaliation provide no basis for relief from the Court's order denying his request for injunction. Although Rule 60(b)(4) provides a basis to obtain relief from a void judgment, plaintiff does not seek relief from any judgment entered in this case, but rather, an order denying his motion for injunction and imposed sanctions for that unwarranted motion. Rule 60(b)(4) thus has no applicability to his allegations. The Court was completely within its purview to deny the motion for injunction and to sanction plaintiff for filing the frivolous motion seeking habeas relief in light of plaintiff's litigation history and the prior warning to him that sanctions could be imposed for such a filing. The Court therefore recommends that the District Court deny the Rule 60(b) motion and supplemental motion and leave its sanction order in place.

## III. SANCTIONS FOR CONTINUED VIOLATION OF ORDERS

As demonstrated above, plaintiff has consistently continued to violate orders of the Court regardless of the imposition of monetary sanctions. Rule 41(b) of the Federal Rules of Civil Procedure permits a court to dismiss an action *sua sponte* for failure to prosecute or follow orders of the court. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988). This authority flows from a court's inherent power to control its docket, prevent undue delays in the disposition of pending cases, and avoid congested court calendars. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-31 (1962). "Dismissal of a case for disobedience of a court order is an exceedingly harsh sanction which should be imposed only in extreme cases, and then only after exploration of lesser sanctions." *Mann v. Merrill Lynch, Pierce, Fenner & Smith*, 488 F.2d 75, 76 (5th Cir. 1973) (per curiam). "Assessments

13

of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings are preliminary means or less severe sanctions that may be used to safeguard a court's undoubted right to control its docket." *Rogers v. Kroger Co.*, 669 F.2d 317, 321-22 (5th Cir. 1982). A court may, nevertheless, enter an involuntary dismissal with prejudice when "a 'clear record of delay or contumacious conduct by the plaintiff' exists and 'lesser sanctions would not serve the best interests of justice.'" *Price v. McGlathery*, 792 F.2d 472, 473 (5th Cir. 1986) (per curiam) (quoting *Rogers*, 669 F.2d at 320). Proper imposition of such a harsh sanction is generally preceded by at least one of three aggravating factors: "plaintiff culpability, prejudice to defendant, and intentional conduct by plaintiff or counsel." *Rogers*, 669 F.2d at 322.

In this instance, a clear record of contumacious conduct by plaintiff exists, not only within the confines of this most recent civil action filed by plaintiff, but also within other actions commenced by him. The record is equally clear that the Court has explored and imposed lesser sanctions to no avail. The Court has repeatedly warned plaintiff that sanctions, even the harsh sanction of involuntary dismissal without prejudice, may be imposed for failure to follow court orders. It has recently monetarily sanctioned plaintiff for failure to comply with a prior court order. Plaintiff responded to that sanction with three additional unwarranted filings. He has exhibited no intent to pay the imposed monetary sanction by the deadline established by the Court. Furthermore, as a party appearing *pro se*, the culpability for plaintiff's contumacious conduct undoubtedly lies with plaintiff. His conduct appears intentional rather than caused by mistake, inadvertence, or unfamiliarity with court rules and procedures. Plaintiff is an experienced litigant who has a propensity for filing actions and filing numerous motions within those actions. The Court thus finds the requisite

14

contumacious conduct and two of the three aggravating factors present in this case.

Because lesser sanctions have had no impact and plaintiff has failed to heed the various warnings given to him, dismissal of this action with prejudice appears appropriate as a sanction. Furthermore, in view of his extensive history of frivolous filings, both fee-paid and when he was permitted to proceed *in forma pauperis*, the Court recommends that the District Court bar plaintiff from pursuing any additional federal actions unless he first obtains leave of court before doing so.

## IV.  PRELIMINARY SCREENING

Notwithstanding the propriety of dismissal of this action as a sanction for failure to comply with the Court's orders, plaintiff's action is also subject to dismissal through preliminary screening. As a prisoner seeking redress from an governmental entity and officers or employees of such an entity, plaintiff's complaint is subject to preliminary screening and may be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998).  Section 1915A "institutes certain screening procedures once a complaint is received by a district court" and "is analogous to the version of 28 U.S.C. § 1915(d) that was in effect before Congress enacted the Prison Litigation Reform Act [(PLRA)] of 1995 . . . [and] is also quite similar to the roles played by Federal Rules of Civil Procedure 11 and 12(b)(6)."  *Id.* at 580 n.2.  Dismissal under § 1915A(b) is mandatory, if the Court finds the complaint or any portion of it meets the § 1915A(b) criteria. *Gladney v. Pendleton Correctional Facility*, 302 F.3d 773, 775 (7th Cir. 2002); *Hines v. Graham*, 320 F. Supp. 2d 511, 526 (N.D. Tex. 2004).

Section 1915A(b) provides for *sua sponte* dismissal if the Court finds the complaint "frivolous or malicious" or if it "fails to state a claim upon which relief may be granted" or seeks monetary damages from a defendant immune from such relief.  *See Martin*, 156 F.3d at 579-80.  A claim is

15

frivolous, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325

(1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal

theory." *Id.* at 327. A claim that falls under the rule announced in *Heck v. Humphrey*, 512 U.S. 477

(1994) "is legally frivolous unless the conviction or sentence at issue has been reversed, expunged,

invalidated, or otherwise called into question." *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996).

A complaint fails to state a claim upon which relief may be granted when it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Smith v. Winter*, 782 F.2d 508, 511-12 (5th Cir. 1986);

*Henrise v. Horvath*, 94 F. Supp. 2d 768, 769 (N.D. Tex. 2000).

Plaintiff sues seven defendants (the State of Texas, five agencies or departments of the State,

and a county court) for negligence, eleven defendants for engaging in organized criminal activity,

and three defendants for various wrongdoing, including fraud, breach of contract, and theft. He

brings suit pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1994; RICO; the Texas Tort Claims Act;

and various federal criminal provisions. As relief he seeks injunctive relief to suspend alleged

unconstitutional portions of Article 11.07; a declaration that Article 11.07 is invalid; monetary

damages; and injunctive relief to suspend his conviction and sentence. The Court addresses

plaintiff's requested relief before proceeding to the various bases for his claims.

## A. <u>Requested Relief</u>

As already noted, suspension of plaintiff's conviction and sentence is not appropriate relief

in this civil action. Release from imprisonment is simply an inappropriate remedy for civil litigation.

*See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974).

Furthermore, although a party may challenge the constitutionality of a statute in federal

16

court, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam). Unless the challenged statute "trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage," the courts presume the constitutionality of the statute and require only that the challenged statute "be rationally related to a legitimate state interest." *Id.*

Plaintiff here specifically challenges the constitutionality of Tex. Code Crim. Proc. art. 11.07, §§ 4(a) and 5 in part. He argues "that the phraseology incorporated [sic] in thoes [sic] sections has allowed some of these Defendants to commit a series of crime inorder [sic] to cover-up [his] illegal conviction and sentence." (Supp. Compl. at 1.) He contends that, because § 4(a) prohibits merits review of a subsequent state application for writ of habeas corpus except when presenting a previously unavailable factual or legal basis for such application or upon a showing of actual innocence, § 4 "does not protect against fraudulent plea agreements as is the case here." (*Id.* at 19.) He further contends that, because § 5 permits the Texas Court of Criminal Appeals to "deny relief upon the findings and conclusions of the hearing judge without docketing the cause", it provides the trial court "a way to cover-up [his] unlawful criminal conviction." (*Id.* at 20.)

Section 5 of Article 11.07 permits the Texas Court of Criminal Appeals to "deny relief upon the findings and conclusions of the hearing judge without docketing the cause, or may direct that the cause be docketed and heard as though originally presented to said court or as an appeal." "Article 11.07, section 4(a) prohibits review of subsequent applications for writ of habeas corpus except in limited circumstances." *Ex parte Brooks*, ___ S.W.3d ___, ___, 2007 WL 987237, at *2 (Tex. Crim. App. Apr. 4, 2007).

17

Prior to enactment of the Habeas Corpus Reform Act of 1995, which included § 4 of Article 11.07, Texas had no statutory restriction on filing subsequent state applications for writ of habeas corpus. *Id.* "The purpose of the Habeas Corpus Reform Act of 1995 was to fulfill the Texas Constitutional mandate requiring a speedy and effective habeas corpus remedy by limiting the availability of subsequent applications and encouraging all-inclusive initial applications." *Id.* Texas has a legitimate state interest in providing a speedy and effective habeas corpus remedy. Sections 4 and 5 of Article 11.07 are rationally related to that interest. Consequently, plaintiff's requests for suspension of alleged unconstitutional portions of Article 11.07 and a declaration that Article 11.07 is invalid do not survive summary dismissal.

Because plaintiff has stated no valid request for declaratory or injunctive relief, his only potentially viable claim for relief in this action is his request for monetary damages pursuant to the various invoked statutes.

## B. Statutory Basis for Claims

### 1. *Section 1985 and 1986 Claims*

Plaintiff cites generically to 42 U.S.C. § 1985 as a basis for some claims. He alleges no facts, however, to state a claim under § 1985(1), which deals with preventing a federal officer from performing his or her duties, *see Kush v. Rutledge*, 460 U.S. 719, 724 (1983). Furthermore, a claim under § 1985(2) necessarily implies the invalidity of plaintiff's conviction, and is thus barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1319-20 (M.D. Fla. 2005). Because plaintiff asserts no intentional discrimination based on race, any claim under § 1985(3) likewise fails. *See Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000). For all of these reasons, plaintiff has stated no claim under § 1985 that survives summary dismissal.

18

"[A] valid § 1985 claim is a prerequisite to a § 1986 claim . . .." *See Bryan*, 213 F.3d at 276. Because plaintiff has no valid § 1985 claim, he has no valid § 1986 claim. Plaintiff's claims under 42 U.S.C. § 1986 must therefore also be dismissed as frivolous.

   **2.** *Section 1994 Claims*

   Plaintiff also brings claims pursuant to 42 U.S.C. § 1994, the Antipeonage Act, which abolishes and prohibits peonage in any Territory or State of the United States. The Thirteenth Amendment of the United States Constitution likewise provides that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted shall exist within the United States, or any place subject to their jurisdiction." "The undoubted aim of the Thirteenth Amendment as implemented by the Antipeonage Act was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States." *Pollock v. Williams*, 322 U.S. 4, 17 (1944).

   Nevertheless, "[f]orced labor in some special circumstances may be consistent with the general basic system of free labor." *Id.* The Fifth Circuit Court of Appeals has specifically held that "[t]he Constitution does not forbid an inmate's being required to work." *Ali v. Johnson*, 259 F.3d 317, 318 n.2 (5th Cir. 2001). Consistent with the language of the Thirteenth Amendment, it held that there is no viable issue of peonage, slavery, or involuntary servitude, when a person has been "duly tried, convicted and sentenced in accordance with the law." *Id.* at 318 (quoting *Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1963)); *accord Pollock*, 322 U.S. at 17 (recognizing that "forced labor has been sustained as a means of punishing crime"); *Mendoza v. Lynaugh*, 989 F.2d 191, 194 n.4 (5th Cir. 1993) (recognizing that "inmates can be required to work" and that a "work assignment alone does not rise to a constitutional violation"). Plaintiff's claims under 42 U.S.C. § 1994 provide

19

no basis for relief.  Such ruling is consistent with *Smithback II*, wherein the Court informed plaintiff that he could not recover on a claim that TDCJ-ID failed to compensate him for prison work.

### 3.  *Title 18 Criminal Claims*

Plaintiff also asserts various criminal provisions of Title 18 of the United States Code as a basis for his claims.  However, the various criminal provisions of Title 18 of the United States Code provide no basis for this civil action.  *See Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960).  The Court may appropriately disregard the criminal provisions as they "provide no civil remedies." *See id.*

### 4.  *RICO Claims*

The Court has construed plaintiff's assertion of claims under "RICO" as asserting claims under the RICO statute, 18 U.S.C. § 1962(a)-(d).  The Fifth Circuit Court of Appeals has reduced these subsections to their "simplest terms" as follows:

> (a) a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;
>
> (b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering activity;
>
> (c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and
>
> (d) a person cannot conspire to violate subsections (a), (b), or (c).

*See Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995); *accord Abraham v. Singh*, 480 F.3d 351, 354-55 (5th Cir. 2007).  Each subsection requires:  "(1) a person who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988) (emphasis in original).

"To avoid dismissal for failure to state a claim, a plaintiff must plead specific facts . . . which establish the existence of an enterprise." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). In this case, plaintiff has pled no facts that suggest, let alone establish, the existence of any enterprise. Because plaintiff's allegations have nothing to do with the acquisition, establishment, conduct, or control of any enterprise as required under RICO, he has failed to state a RICO claim upon which the Court can grant relief.

### 5. *Section 1983 Claims*

Plaintiff sues twenty-one various defendants for alleged violations of due process, equal protection, and denial of liberty, twelve of them in both their official and individual capacities. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). The Court addresses plaintiff's official-capacity claims and his general claims that defendants have denied him equal protection and liberty before addressing his § 1983 claims on a defendant-by-defendant basis – grouping the defendants when appropriate.

### i.  Official Capacity Claims

Plaintiff sues twelve defendants in their official capacity.  Such official-capacity claims, how-ever, are merely another way of pleading an action against the entity of which the individual defend-ants are agents.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "As long as the . . . entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *See id.* at 166.  In this instance, plaintiff sues the various entities of which the individual defendants are agents.  Consequently, the Court should dismiss the official-capacity claims as duplicative of the claims against the respective entities themselves.  *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).

### ii.  Claimed Denial of Liberty

Plaintiff alleges a general, non-specific denial of liberty.  Nevertheless, it appears that such denial stems from his alleged wrongful conviction, failed attempts to overturn that conviction, and a failed attempt to obtain executive clemency from the Texas Governor.  As the Court previously informed plaintiff in *Smithback I and II*, claims that necessarily imply the invalidity of plaintiff's conviction are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Such claims include ones that seek to undermine a "conviction or the consequences flowing therefrom, such as the availability of an executive clemency petition."  *See Kutzner v. Montgomery County*, 303 F.3d 339, 340 (5th Cir. 2002).  The general claim that defendants have denied plaintiff his liberty is barred by *Heck* and is legally frivolous.

### iii.  Equal Protection Claims

Plaintiff also asserts a general claim that defendants have violated his right to equal pro-tection.  To maintain an equal protection claim, plaintiff "must allege and prove that he received

treatment different from that received by similarly situated individuals and that the unequal treat-
ment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001).
Plaintiff, however, makes no allegation that he has received unequal treatment which stems from
any discriminatory intent. "Plaintiffs who assert claims under 42 U.S.C. § 1983 and other civil rights
statutes . . . must plead the operative facts upon which their claim is based. Mere conclusory
allegations are insufficient." *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987). Because plaintiff
fails to allege discriminatory intent, the Court should dismiss plaintiff's equal protection claim as
conclusory.

### iv.  County Court and District Attorney's Office

As found in *Smithback I*, the Dallas County District Attorney's Office (Defendant 15) and
the 265th Judicial District Court (Defendant 17) are non-jural entities that are not subject to suit.
The § 1983 claims against these defendants necessarily fail.

### v.  State and its Agencies

As the Court found in *Smithback V*, the Eleventh Amendment provides the State of Texas
(Defendant 1) and its agencies (Defendants 2 through 6) immunity from suits for damages in federal
court. The Eleventh Amendment provides: "The Judicial power of the United States shall not be
construed to extend to any suit in law or equity, commenced or prosecuted against one of the United
States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This with-
drawal of jurisdiction effectively confers an immunity from suit." *Puerto Rico Aqueduct & Sewer Auth.
v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Stated simply, "an unconsenting State is immune
from suits brought in federal courts by her own citizens as well as by citizens of another State."
*Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Although Congress has the power to abrogate that

immunity through the Fourteenth Amendment, *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Communications v. BellSouth Telecomm. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. § 1983, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  In light of the Eleventh Amendment immunity, plaintiff has failed to state a claim under § 1983 upon which relief can be granted against the State and its agencies.[12]

### vi.  State Judges

Plaintiff sues Judge Dean (Defendant 18) of the 265th Judicial District Court and Judges Sharon Keller, Tom Price, and Lawrence Meyers (Defendants 8 though 10) of the Texas Court of Criminal Appeals.  As found in *Smithback I and II*, Judge Dean is immune to damages.  Plaintiff's current claims against Judge Dean appear to arise from the Judge's findings and conclusions related to plaintiff's third state application for writ of habeas corpus filed August 9, 2005.  (*See* Supp. Compl. at 19.)  He thus enjoys immunity in this case as well.  Judges Keller, Price, and Meyers likewise enjoy judicial immunity in this case.  Plaintiff's claims against them appear to relate to their denial of his third state habeas application.  (*See id.* at 20, 23.)

### vii.  Assistant District Attorney

Plaintiff sues Assistant Dallas County District Attorney Coats (Defendant 16) in this action.

---

[12]  In addition, plaintiff's negligence claims provide no basis for obtaining relief under § 1983 because mere negligence is not actionable under that statute.  *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (concluding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property"); *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) (stating that "[r]espondents' lack of due care . . . simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent"); *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 635 (5th Cir. 1999) (stating that "negligence on the part of state officials does not suffice to make out any due process violation under the Fourteenth Amendment").

In *Smithback I and II*, the Court previously found that former Dallas County District Attorney Hill enjoyed prosecutorial immunity with respect to plaintiff's action. For similar reasons, defendant Coats enjoys prosecutorial immunity. Plaintiff's claims against her stem entirely from a response she filed as a prosecutor to plaintiff's state application for writ of habeas corpus filed August 9, 2005. (*See* Supp. Compl. at 17-18.)

### viii. Governor

Plaintiff sues Governor Perry (Defendant 7) for his role in denying him access to executive clemency proceedings. (Supp. Compl. at 21.) Plaintiff contends that, on November 22, 2005, he requested a "Pardons Packet" so that he could obtain executive clemency. (*Id.*) After being informed that his request "was received, reviewed, and placed in [his] permanent parole file for further review when [he] is up for parole . . . in 2022", plaintiff directly wrote to Governor Perry requesting assistance and access to executive clemency proceedings. (*Id.*) He alleges that Governor Perry failed to respond to that request. (*Id.*)

The Governor of Texas, based upon a recommendation of a majority of the Board of Pardons and Paroles, may grant clemency. Tex. Const., Art. IV, § 11; Tex. Code Crim. Pro. Ann. art. 48.01. A state prisoner, however, "has no federal constitutional right to a clemency pardon." *See Cloud v. Cockrell*, No. 3:02-CV-2789-L, 2003 WL 21448351, at *3 (N.D. Tex. Mar. 27, 2003) (findings, conclusions, and recommendation accepted by District Court). Relief may be had under § 1983 only for an alleged deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States. Because the claims against Governor Perry relate to executive clemency which is neither secured by the United States Constitution nor federal law, such claims fail to state a claim upon which relief can be granted under § 1983.

25

### ix.  Retained Counsel and Law Firm

Plaintiff sues two individual attorneys and their law firm for various acts and omissions related to their retention for representation on plaintiff's post-conviction matters.  (Supp. Compl. at 12-13, 24.)  It is well established, however, that neither appointed nor retained counsel act under color of state law in representing a defendant at trial or on direct appeal.  *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (holding that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding); *Mills v. Criminal Dist. Ct. No. 3*, 837 F.2d 677, 679 (5th Cir. 1988) (holding that "private attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983"); *Russell v. Millsap*, 781 F.2d 381, 383 (5th Cir. 1985) (holding that retained attorney does not act under color of state law).  Nevertheless, in certain circumstances, private parties may be acting "under color of state law" and thus held liable under § 1983:

> 'Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute.  To act 'under color' of law does not require that the accused be an officer of the State.  It is enough that he is a willful participant in joint activity with the State or its agents.'

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)).  To support such a conspiracy claim, plaintiffs "must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act and 2) an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (citations omitted).

To find state action by a private individual in the absence of an alleged conspiracy, a plaintiff must show that the private actor "performs a function which is traditionally the exclusive province

of the state" or that "there is a nexus between the state and the action of the private defendant such that the action is fairly attributable to the state." *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989). Under the latter alternative,

> a finding of state action is justified "'only where it can be said that the state is responsible for the specific conduct of which the plaintiff complains.' A state is not responsible for a private party's decisions unless it 'has exercised coercive power or has provided such significant encouragement, . . . that the choice must in law be deemed to be that of the state.'"

*Id.* (citations omitted).

Attorneys do not perform a function that is traditionally the exclusive province of the state. In addition, there is no nexus between the State and the actions of plaintiff's former attorneys such that the attorneys' actions are fairly attributable to the State. Further, plaintiff has alleged no agreement between his former attorneys and any state actor to commit an illegal act. Without an allegation of some agreement between his former attorneys and a state actor, plaintiff has failed to state a viable claim under § 1983 against defendants Barbare, Birdsall, and their law firm, and his claims against them should be dismissed.

### x. *Other Defendants*

Plaintiff also sues Brad Livingston, Executive Director of TDCJ; Nathaniel Quarterman, Director of TDCJ-CID; Rissi Owens, Director of BPP; and Christina Melton Crain, Chairwoman TBCJ (Defendants 11 through 14). As was the case in *Smithback V*, plaintiff has alleged no personal involvement by Brad Livingston. Plaintiff has also alleged no personal involvement by Quarterman, Owens, or Crain. He merely makes conclusory references to "overt and covert action, and omissions" and summarily sets forth alleged violations of 18 U.S.C. §§ 241, 242, 1581, 2331(5), 2332b, 2338, and 2381 and 42 U.S.C. § 1994. (*See* Supp. Compl. at 6-10.) In the absence of an allegation

27

of personal involvement by Defendants 11 through 14, the § 1983 claims against them necessarily fail. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

Plaintiff's claims against these state officials appear to arise from the position they hold at the various state agencies. Plaintiff sought to sue the four state agencies for neglecting to prevent the deprivation of his due process and equal protection rights, including but not limited to the complete denial of access to executive clemency. (*See* Supp. Compl. at 6-7.) As already discussed, however, negligence provides no basis for liability under § 1983.

### 6. *Claims under Texas Tort Claims Act*

Plaintiff also relies upon the Texas Tort Claims Act for claims against all defendants other than Defendants 19 through 21 – the two private attorneys and the related law firm. The TTCA permits a person to "sue a governmental unit for damages allowed by [the Act]." *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.025(b) (Vernon 2005). However, although the State of Texas has waived its sovereign immunity to the extent of liability created by the TTCA, *see id.* § 101.025(a), Texas has waived "sovereign immunity in state court only", *Sherwinski v. Peterson*, 98 F.3d 849, 852 (5th Cir. 1996). Consequently, plaintiff has stated no claim under the Texas Tort Claims Act which entitles him to relief in this federal action against the State of Texas or its agencies.

Although plaintiff also relies upon the TTCA for claims against other defendants, he only asserts claims of negligence against the State of Texas and its agencies. Because the TTCA specifically excludes or excepts claims based upon any "intentional tort", *see id.* § 101.057, plaintiff's TTCA claims against such other defendants necessarily fail. Additionally, the TTCA waives no immunity possessed by any individual, *see id.* § 101.026, and also excludes or excepts "claim[s] based

on an act or omission of a court of this state or any member of a court of this state acting in his official capacity or to a judicial function of a governmental unit" and "claim[s] based on an act or omission of an employee in the execution of a lawful order of any court", *see id.* § 101.053. Consequently, to the extent such other defendants are protected by immunity or plaintiff's claims fall within the exclusion of § 101.053, plaintiff likewise has no viable claim under the TTCA.

**7. *Other State Law Claims***

Although plaintiff specifically relies on the Texas Tort Claims Act, it also appears that he pursues other state law claims such as his claims of fraud, embezzlement, and breach of contract. To the extent that the District Court dismisses this action as a sanction for plaintiff's contumacious conduct, it need not make any specific findings or ruling regarding these other claims based on state law.

To the extent that the Court dismisses this action solely on the merits, it should decline to exercise supplemental jurisdiction over these other state claims. Section 1367 of Title 28 of the United States Code permits federal courts to exercise supplemental jurisdiction over pendent state claims. Whether to exercise such jurisdiction after dismissing the underlying federal claims is a matter left to the sound discretion of the Court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000). When the Court dismisses the federal claims at a preliminary stage of litigation, judicial economy argues against the exercise of pendent or supplemental jurisdiction over state claims. *See LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986). The Court should therefore dismiss plaintiff's other state claims without prejudice to plaintiff pursuing them in state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

## III.  RECOMMENDATION

For the foregoing reasons, the Court recommends that plaintiff's complaint be dismissed with prejudice, pursuant to Fed. R. Civ. P. 41(b), for the repeated failures of plaintiff to comply with orders of the Court.  In the alternative, or in addition, the Court should dismiss plaintiff's claims based on federal law and the Texas Tort Claims Act because they are (1) frivolous, (2) fail to state a claim upon which relief may be granted, or (3) seek monetary damages from a defendant immune from such relief.  To the extent the Court dismisses plaintiff's federal claims and state claims asserted under the Texas Tort Claims Act for lack of merit, it should dismiss this action with prejudice pursuant to 28 U.S.C. § 1915A and decline to exercise supplemental jurisdiction over any state claim other than the claims asserted under the Texas Tort Claims Act.[13]  Whether the Court dismisses this action as a sanction, on the merits, or both, the Court further recommends that the District Court bar plaintiff from pursuing any additional federal actions unless he first obtains leave of court before doing so in light of his litigation history.  The Court also recommends that the District Court deny plaintiff's Rule 60(b) motion and supplemental motion and leave its prior sanction order in place.

---

[13] Although *Heck v. Humphrey*, 512 U.S. 477 (1994) may provide a means to dismiss a portion of this action, the Court need not rely upon *Heck* when the case presents issues that are appropriate for early and final determination.  For instance, when an action raises an issue of immunity, the Court to the extent it is feasible to do so should determine that issue as early in the proceedings as possible.  *See Patton v. Jefferson Correctional Ctr.*, 136 F.3d 458, 462 n.6 (5th Cir. 1998); *Hulsey v. Owens*, 63 F.3d 354, 356 (5th Cir. 1995); *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).  In addition, "[w]hen a plaintiff seeks relief unavailable under 42 U.S.C. § 1983 or sues individuals or entities who are not proper parties under § 1983, it also seems appropriate to have an early determination of those issues."  *Smithback v. Cockrell*, No. 3:01-CV-1658-M, 2002 WL 1268031, at *2 (N.D. Tex. June 3, 2002) (accepting findings and recommendation of United States magistrate judge).  The instant case likewise provides circumstances when it is appropriate to have an early and final determination of the issues presented.  Consequently, the Court need not concern itself with dismissing any part of the action under *Heck*.  Were the Court inclined to dismiss a portion of this action under *Heck*, such dismissal would be with prejudice as frivolous until such time as plaintiff satisfies the conditions set forth in *Heck*.

SIGNED this 26th day of April, 2007.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE



**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE